## COMMONWEALTH *vs.* ABRAHAM MELENDEZ.

Middlesex. January 6, 1998. - April 10, 1998.

Present: WILKINS, C.J., LYNCH, GREANEY, FRIED, & IRELAND, JJ.

*Felony-Murder Rule. Joint Enterprise. Practice, Criminal,* Instructions to jury, Capital case. *Homicide. Robbery.*

At the trial of an indictment for felony-murder with joint venture armed robbery as the underlying felony, the omission in the judge's supplemental written instructions of an instruction that the jury could find felony-murder only if they determined that the defendant was the assailant did not create a substantial likelihood of a miscarriage of justice, where the judge's initial oral instructions correctly instructed the jury on that issue and were not contradicted by the supplemental written instructions, which were otherwise correct. [215-219]

At the trial of an indictment for felony-murder with armed robbery as the underlying felony, the absence of an instruction on the lesser-included offense of unarmed robbery as the underlying felony did not create a substantial likelihood of a miscarriage of justice, where the evidence did not warrant such an instruction. [219-220]

A criminal defendant did not demonstrate that statements in the prosecutor's closing argument constituted improper vouching for a Commonwealth witness, or that certain statements by the trial judge constituted improper or prejudicial endorsement of witness testimony. [220]

INDICTMENTS found and returned in the Superior Court Department on September 9, 1994.

The cases were tried before *Robert H. Bohn, Jr.,* J., and a motion for a new trial was heard by him.

*Kevin S. Nixon* for the defendant.

*David C. Megan,* Assistant District Attorney (*David R. Yannetti,* Assistant District Attorney, with him) for the Commonwealth.

WILKINS, C.J. The defendant appeals from convictions of murder in the first degree on the theory of felony-murder and of armed robbery and from the denial of his motion for a new trial. We affirm the convictions and the denial of his motion for a new trial. The defendant is not entitled to relief pursuant to G. L. c. 278, § 33E.

The jury could have found the following. Late in the afternoon of March 4, 1994, the defendant and four other men decided to rob a "drug house" located in a second-floor apartment at 23 Dane Street in Lowell. Each had been a solicitor of business for that cocaine-selling enterprise. The defendant was armed with a knife. When the victim opened the door of the apartment part way in response to a knock, the defendant kicked the door in. He struggled with the victim and held a knife to his neck. Two other intruders fought with the only other occupant of the apartment. The remaining intruders searched the apartment for drugs and took some cocaine. The defendant stabbed the victim in the left calf and shouted, "Let's go. I stabbed him." The victim bled to death because the wound had severed his left posterior tibial artery.

One of the five men, Alexis Jiminez, admitted his involvement to the police and identified the defendant as the intruder who had stabbed the victim. The defendant, however, introduced evidence that another man, Jimmy Rodriguez, had admitted, had even boasted, that he had stabbed the victim.

There is no doubt that an intruder stabbed the victim with a knife during the robbery of the Dane Street apartment. The jury concluded that the defendant had participated in the intrusion. The question remained for the jury whether the evidence showed beyond a reasonable doubt that the defendant was guilty of felony-murder. If the jury were to find that the defendant himself stabbed the victim, guilt of felony-murder would unquestionably be established. We conclude that the judge's instruction allowed the jury to find felony-murder only if they found that the defendant was the assailant. The defendant vigorously contests this conclusion and most particularly, based on his motion for a new trial, challenges portions of the judge's supplemental jury instructions, to which he did not object at trial. The question, therefore, is whether any error in the supplemental jury instructions created a substantial likelihood of a miscarriage of justice. We devote most of our discussion to this issue.

1. The defendant's principal contention is that the judge permitted the jury to convict him of felony-murder on the theory of joint venture in the commission of an armed robbery, during which the victim was killed, without effectively advising the jury that they had to find that, if a coventurer killed the victim, the defendant knew the coventurer was armed.

It is, of course, correct that joint venture guilt for the com-

mission of a crime involving the use of a dangerous weapon may not be imposed on a defendant unless he knew that one of his companions was armed. See *Commonwealth* v. *Claudio*, 418 Mass. 103, 111 (1994), and cases cited. We agree with the defendant that the omission of the knowledge element in instructing on such a crime would require a new trial, even (as here) in the absence of an objection. See *Commonwealth* v. *Watson*, 388 Mass. 536, 546 (1983), *S.C.*, 393 Mass. 297 (1984). Cf. *Commonwealth* v. *Thomas*, 401 Mass. 109, 117-118 (1987); *Commonwealth* v. *Lennon*, 399 Mass. 443, 447-449 (1987).

The defendant relies on what he asserts is a deficient written instruction given in response to a jury question. To assess the merits of that argument we must first set forth what the judge instructed the jury before they began their deliberations, instructions that the defendant does not challenge. The judge first defined what the jury would have to find to convict the defendant of armed robbery: (1) the defendant was armed with a dangerous weapon at the time of the crime; (2) the defendant assaulted the victim; (3) the defendant or a joint venturer took property from the control of the victim; and (4) did so with the intent to steal. This instruction referred to joint venture in the stealing of property (items [3] and [4] above), but it did not do so as to assault and the possession of a dangerous weapon (items [1] and [2] above).

The judge then instructed the jury on the principles of joint venture as applied to armed robbery, stating that the defendant had to be armed or know that a coventurer was armed with a dangerous weapon and had to assist the principal in the commission of the crime while sharing the mental state required for that crime.

After defining the elements of the crime of armed assault in a dwelling (as to which the jury returned a verdict of not guilty), the judge instructed the jury on first degree felony-murder. He told the jury that the Commonwealth had to prove that "the defendant committed an unlawful killing," while engaged, by himself or with others, in committing or attempting to commit a crime punishable by life in prison that was either inherently dangerous to human life or committed with conscious disregard for the risk to human life. He added that the Commonwealth had to prove that the defendant unlawfully killed the victim while committing or attempting to commit either of the felonies charged. These instructions unambiguously told the jury that the

defendant could be found guilty of murder only if he himself killed the victim.

On the day after the jury received the case, they asked for "a written description of joint venture" and an explanation of the charge for armed robbery: "does the charge say [the defendant] was the one armed with the knife during the robbery[?]" After discussion and with the concurrence of the prosecutor and defense counsel,[1] the judge read and then delivered to the jury in writing a three-element definition of joint venture, which is set forth in the margin.[2] No one suggested the addition of the requirement that a defendant must have known that a coventurer was armed in order to be convicted of armed robbery as a coventurer. That a coventurer had been armed was not the theory on which the judge had instucted the jury on felony-murder with armed robbery as the underlying felony. Also, the defendant could be guilty of armed robbery, as the judge instructed, if he was the coventurer who was armed. The judge's response left unanswered, at least directly, the jury's question whether the armed robbery charge said that the defendant was the one armed with the knife during the robbery.

Later that day, the transcript does not say when, the jury returned and pressed the joint venture issue again. They asked, "does joint venture apply to the armed robbery and assault charges[?] Also, does joint venture apply to [the] first-degree murder charge[?]" The judge and counsel agreed that the jury should be told that joint venture applied to the charge of armed robbery but not to the charge of armed assault in a dwelling. Defense counsel argued that the jury should be told that joint venture did not apply to the murder charge. After discussion, the judge instructed the jury as follows on the murder charge:

"Joint venture only applies to the felony-murder charge

---

[1]Defense counsel had objected, and renewed his objection, to any instruction that would warrant guilt on a joint venture theory.

[2]"In order to convict the defendant of a joint venture, the Commonwealth must persuade you beyond a reasonable doubt of three essential elements. First, that the defendant was present at the scene of the crime. Second, that the defendant had knowledge that another intended to commit the crime and shared that intent to himself. And third, that the defendant, by agreement, was willing and available to help the other in carrying out the crime if necessary." In *Commonwealth* v. *Schand*, 420 Mass. 783, 793-794 (1995), we approved substantially this instruction as proper where the evidence warranted an instruction on joint venture armed robbery.

if you are of the opinion following your review of the evidence and your deliberations that the Commonwealth has proven to you beyond a reasonable doubt all four of the elements of the underlying offense of armed robbery and all three of the elements of the principle of joint venture.

"That is, you must determine whether the Commonwealth has proven to you beyond a reasonable doubt the elements which constitute the underlying offense and you must determine that the Commonwealth has proven to you beyond a reasonable doubt the elements which constitute — make up this principle of joint venture. Only then may you turn to an analysis of the felony-murder charge.

"And only then can you consider whether the Commonwealth has proven beyond a reasonable doubt that there was an unlawful killing, that that unlawful killing occurred in the commission or the attempted commission of a felony punishable by life imprisonment, and that that underlying felony was either inherently dangerous to human life or committed with conscious disregard on the part of the defendant for the risk to human life.

"So, that's the path your analysis takes. An analysis of the elements which the Commonwealth must prove with respect to the indictment charging armed robbery, an analysis of the concept of joint venture, and then, depending on your resolution of those two issues, whether or not the Commonwealth has proven to you beyond a reasonable doubt these three elements which constitute felony-murder."[3]

This instruction may have been so summary that it was not helpful to the jury, but it did not create a substantial likelihood of a miscarriage of justice. The judge initially had told the jury, and thereafter never told them otherwise, that they had to find that the defendant was the stabber in order to convict him of

---

[3]The reference to inherent dangerousness and to the conscious disregard for the risk to human life in the next to last paragraph was unnecessary because the underlying felony was armed robbery. This aspect of the charge was more favorable to the defendant than the law required. See *Commonwealth* v. *Simmons*, 417 Mass. 60, 71 (1994).

felony-murder with armed robbery as the predicate felony. Thus the judge told the jury that they could not properly convict the defendant of felony-murder on the theory that one of his coventurers stabbed the victim. The additional, agreed definition of joint venture was correct as a general proposition. See *Commonwealth* v. *White*, 422 Mass. 487, 495 (1996). Some might conclude that the additional instruction, standing alone, was even adequate as a joint venture armed robbery instruction.[4] Because of the likely greater impact of supplemental written instructions than oral instructions, it would have been preferable to have reminded the jury that, if they were to find the defendant guilty of felony-murder, they had to find that the defendant was the stabber. But the omission did not create a substantial likelihood of a miscarriage of justice.[5]

2. The defendant's other arguments require only brief comment.

(a) The judge was not required to instruct on the lesser-included offense of unarmed robbery as a predicate felony to felony-murder. The evidence at best marginally warranted such an instruction. The Commonwealth opposed giving such an instruction, and for adequate tactical reasons defense counsel

---

[4]In *Commonwealth* v. *Watson*, 388 Mass. 536, 549 (1983) (Nolan, J., dissenting), three Justices of this court concluded that the judge did not err in instructing on felony-murder joint venture by omitting an instruction that the defendant had to know that his coventurer was armed. The judge told the jury, as did the supplemental instruction here, that the defendant must have shared the specific intent to see the successful completion of the crime. The dissenters in the *Watson* case concluded that the requirement of proof of the defendant's knowledge of the coventurer's possession of a weapon could be inferred from the requirement that the defendant intended to see the crime of armed robbery completed.

[5]The defendant argues that, because the jury acquitted the defendant of armed assault in a dwelling, the jury must have concluded that the defendant did not stab the victim. The judge had instructed the jury that principles of joint venture were not applicable to armed assault in a dwelling. This instruction was consistent with the instruction that the jury had to find that the defendant was the stabber to convict him of felony-murder.

We have no way of determining the jury's reason for their verdict on the armed assault in a dwelling indictment. It is possible that they concluded that the Commonwealth had not proved beyond a reasonable doubt that the apartment, used for illicit retailing of cocaine, was a dwelling. The defendant moved unsuccessfully for a required finding of not guilty on the basis that the apartment was not a dwelling. In any event, inconsistent verdicts are not grounds for vacating convictions. See *Commonwealth* v. *Hamilton*, 411 Mass. 313, 324 (1991).

could have decided not to press for one. It would have provided an alternative ground for finding the defendant guilty of felony-murder. The issue here is not whether the defendant received the effective assistance of counsel, but rather whether there was a substantial likelihood of a miscarriage of justice. *Commonwealth* v. *Wright*, 411 Mass. 678, 681 (1992). There was none.

(b) We do not read the prosecutor's closing argument as vouching for Jiminez, the Commonwealth's principal witness. The prosecutor was arguing what Jiminez knew to be true. He was not representing, however, what he as a prosecutor knew to be true.

(c) It would have been better if, on the third day of trial, the judge had not characterized previous witnesses as having "testified with respect to those incidents that occurred on March 4, 1994 at 23 Dane Street." Any implication of judicial endorsement of those witnesses' testimony is, however, remote. The same can be said of a similar summary on the next day. We see no prejudice to the defendant.

When the Commonwealth rested, the judge told the jury that the prosecutors "have presented to you all of the evidence that they feel is necessary and appropriate to return a verdict of guilty in these matters." When the defendant rested, the judge said that it meant that "he has presented all of the evidence he believes was appropriate and necessary and sufficient for you to return a verdict for [the] defendant in this case." The statements tended to cancel one another out and were not prejudicial, particularly in light of the judge's detailed jury instructions. A judge cannot know, however, what counsel are thinking when they rest their case.

3. The order denying the motion for a new trial is affirmed. The convictions are affirmed.

*So ordered.*